AMANDUS BACH v. JOHN A. BURKE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON
PLEAS OF NORTHAMPTON COUNTY.

Argued March 9, 1891—Decided April 20, 1891.

1. Upon the petition of the defendant in a pending suit, alleging a valid
   agreement of the plaintiff to discontinue, acquiesced in by his counsel,
   the Court of Common Pleas has jurisdiction to enforce the discontin-
   uance by rule, but its refusal to make the rule to discontinue absolute
   cannot be reviewed by the Supreme Court: Wilkins v. Burr, 6 Binn.
   389, explained.
2. If, in the present case,—the court below filing no opinion,—it was not
   thought the facts averred in the petition were sufficiently well estab-
   lished to afford safe ground for summary decision on a rule, we see no
   reason why they may not be pleaded, or given in evidence as an equi-
   table release, under the procedure act of May 25, 1887, P. L. 271: Per
   Mr. Justice MITCHELL.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 20 July Term 1890, Sup. Ct.; court below, No. 45
June Term 1884, C. P.

On May 16, 1884, Amandus Bach brought foreign attach-
ment in case against John A. Burke. A narr, not shown in
the paper-books, was filed April 5, 1885, and on April 21st,
the defendant by his attorneys pleaded non-assumpsit, set-off,
payment with leave, etc. It appeared that the case was on
the trial-list twice in 1886, four times in 1887, and four times
in 1888, and each time marked "continued."

On December 13, 1888, the defendant presented a petition,
verified by affidavit, averring as follows:

"That on or about October 23, 1886, A. Bach, plaintiff in
this suit against me, came to me and solicited me to make an
agreement to assist him in his defence in a certain suit of John
Brown, to foreclose a mortgage against him, said A. Bach, Dr.
John Buzzard and Joseph Bach, assignees for benefit of credi-
tors of said A. Bach, at No. 2 April Term 1886, as he knew

Statement of Facts.

that I was in possession of facts and documents which would make successful his defence in the mortgage suit of Brown. He first said he would cancel his suit against me, in the event of his success in defending against Brown, but I utterly refused to give the preparation and aid he desired unless he would discontinue his suit against me and discharge me forever from all further liability in the same, which he finally agreed fully to do, and said he' would instruct his counsel, Judge Kirkpatrick, to discontinue the suit, and that he would see that his father, the assignee, concurred in and authorized it. Thereupon, in due time I proceeded to prepare a statement of facts, and gather together and compile documentary evidence with reference to the transactions of the New Bangor Slate Company, to show that a sale of all its property had been caused by said Brown on an illegal judgment, which sale had made valueless the capital stock of said company, a quantity of which was held by said Bach, and a much larger quantity by me ; and at the request of said Bach I came to Easton three or four different times in the year 1887 for the purpose of joint consultations with my counsel and the counsel of Bach, all of whom were also counsel for the defendants in the suit of Brown v. Bach, prepared with my books, documents, statement of facts for such consultations, and prepared to testify in court in said suit of Brown v. Bach. At one of these times, one of my counsel, Mr. Chase, in open court, introduced me to Judge Kirkpatrick, and in reply to Mr. Chase's statement that I had come to testify in the suit of Brown v. Bach, (which suit had been continued by plaintiff), in pursuance of the agreement with Bach, to discontinue his suit against me, (which was also on list for trial,) Judge Kirkpatrick said he fully understood the nature of the agreement, that it was all right, but the discontinuance of Bach's suit against me would better not be entered on the record before the suit of Brown v. Bach was disposed of, as it might affect the latter suit, but that the matter could rest just as safely in the hands of the counsel for both parties. That, as at another time my counsel, Mr. Mackey, gave me a like version of the matter, I rested the same with my counsel, supposing it was all right, and that Bach's suit against me was in fact discontinued, until in September, 1888, I learned that it was being pressed for trial. I have always

Opinion of the Court.

held myself ready to go to Easton whenever desired, to testify
and assist in gathering up evidence in the suit of Brown v.
Bach, and was greatly surprised to learn that such suit had
been compromised without advising with or notifying me; and
as I have been subjected to great expense in preparing the tes-
timony and attending court, as well as damaged by the non-
prosecution of the suit of Brown v. Bach, I pray the honorable
court to order a discontinuance of the suit of Bach against me,
in accordance with the agreement between us, and the express
understanding of the counsel for both parties."

Appended to the foregoing, was a paper signed by the defend-
ant's attorneys, setting forth that upon said affidavit, as well
as their personal knowledge of the facts therein stated, so far
as they referred to themselves and to the attorney of the plaint-
iff, they prayed the court in behalf of the defendant, for a rule
on the plaintiff to show cause why a discontinuance of the
cause should not be entered.   Rule granted as prayed for.

No answer to said rule was filed, but depositions having
been taken and read by both parties, the court, SCHUYLER, P.
J., on January 14, 1890, after argument, discharged the rule
without opinion filed; exception.   Thereupon, the defendant
took this appeal, assigning the order discharging said rule for
error.

*Mr. S. B. Chase* (with him *Mr. Geo. W. Mackey*), for the
appellant.

Counsel cited: Weeks on Attorneys, § 78; Wilkins v. Burr,
6 Binn. 389.

There was no appearance for the appellee.

OPINION, MR. JUSTICE MITCHELL:

On the facts presented in the petition there was an agree-
ment between the parties, upon a good consideration, to dis-
continue this suit, and the agreement was known to and so far
acquiesced in by the counsel as to bring it within the summary
jurisdiction of the court to enforce by rule.   This is entirely
clear, upon the authority of Wilkins v. Burr, 6 Binn. 389, an
almost exactly analogous case which Chief Justice TILGHMAN
held to fall " within the reason of that principle by which

### Opinion of the Court.

courts compel the specific execution of agreements concerning suits depending before them."

But that case, though commenced by capias in the Common Pleas, was immediately transferred, as I have ascertained by examination of the original record, to this court by habeas corpus, and all· the proceedings subsequent to the writ were here as in a court of original jurisdiction. The decision is authority, therefore, for the court below to make absolute the rule to discontinue, but its refusal to do so is not a matter that we can review. There is no judgment to which a common-law writ of error would lie, and the case is not within any of the special appeals allowed by statute.

We are not informed of the grounds on which the court below discharged the rule. If it was from doubt of its authority, as the case is very much out of the usual course of proceeding, the decision in Wilkins v. Burr solves that doubt in favor of the jurisdiction. If for other reasons, we may say that on the facts, as they seem to be conceded, the petitioner appears to us to be entitled to the relief asked; but the consideration of the case on the merits is for the court below, not for us. If that court does not think the facts sufficiently established to be safe ground of summary decision on a rule, we perceive no reason why it may not permit them to be pleaded in abatement, or given in evidence as an equitable release, under the hotchpot pleading of the procedure act. But at present there is nothing before us for review.

Writ quashed.